UNITED STATES of America, ex rel.,
Norman I. GOLD, Plaintiff,

v.

MORRISON–KNUDSEN COMPANY, INC., Black River Constructors, Fort Drum Constructors and National Structures Inc., d/b/a Envirodome Domicile Operations, Defendants.

No. 93–CV–229.

United States District Court,
N.D. New York.

Nov. 18, 1994.

**458**

Norman I. Gold, pro se.

Joel L. Lindy, Albany, NY, for defendants.

Thomas J. Maroney, U.S. Atty., Syracuse, NY (William H. Pease, Asst. U.S. Atty., of counsel), U.S. Dept. of Justice, Civ. Div., Washington, DC (Carol J. Bennett, of counsel), for the U.S.

### MEMORANDUM DECISION AND ORDER

CHOLAKIS, District Judge.

Presently before the Court is defendants' motion (1) to dismiss plaintiff's amended complaint pursuant to Fed.R.Civ.P. 12(b) and/or grant defendants summary judgment pursuant to Fed.R.Civ.P. 56, and (2) for attorney's fees; and plaintiff's cross-motion for an extension of the discovery date deadline.

Previously, this court considered a motion to dismiss brought by defendants Morrison–Knudsen Company (MKC), Black River Constructors (BRC), Fort Drum Constructors (FDC), and National Structures Inc. (NSI), after which the Court permitted *qui tam* plaintiff Norman Gold to correct the deficiencies in his False Claims Act complaint[1] by alleging fraud with particularity as Fed.

R.Civ.P. 9(b) requires. *See* Memorandum Decision and Order dated Dec. 3, 1993. Subsequently, Gold timely submitted an amended complaint and, thereafter, defendants' again moved to dismiss Gold's action for failure to plead fraud with particularity. As a result of that motion, this Court dismissed Gold's first claim with prejudice, but preserved his second and third claims. *See* Memorandum Decision and Order dated March 3, 1994.

In those two remaining claims, Gold: (1) alleges irregularities in FDC's original bid and subsequent attempts to increase that bid[2] ("Count II"); and (2) contends that the MKC, through BRC, manipulated work progress schedules using the Network Analysis System (NAS) software in order to justify unnecessary government expenditures on overtime, interim progress payments in advance of actual progress in the construction, and ultimately, claims for damages resulting from contrived delays ("Count III"). In making his assertions, Gold relies heavily on documents that he incorporated into his original and amended complaints, and principally upon the memoranda of one Robert R. Oliver, a contracting engineer with the Army Corps of Engineers, who monitored the progress of the Fort Drum construction.

According to defendants: (1) Count II is based upon information disclosed in news articles appearing in the *Engineering News Record* and the *Syracuse Herald Journal,* and material the Corps sent to Gold—including Lester Edelman's Final decision, which permitted FDC to correct the mistake in its bid; and (2) Count III is based upon an administrative report prepared by a Corps engineer. Thus, defendants contend that, because these remaining claims are based upon publicly disclosed material, these claims are barred under 31 U.S.C. § 3730(e).

Section 3730(e)(4) provides:

---

1. Gold claims that defendant MKC and several of its joint ventures and subsidiaries, somehow defrauded the United States with respect to three construction contracts involving improvements to the military installation at Fort Drum near Watertown, New York. Gold, the proprietor of an engineering firm, unsuccessfully bid to perform those contracts.

2. In support of his conclusion that the defendant overcharged the government by intentionally underbidding and thereafter successfully amending its bid, Mr. Gold attaches the "Solicitation, Offer, and Award" form for the FY86 Infrastructure project as an exhibit to the complaint. *See* Amended Complaint at Exh. G.

(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

"The satisfaction of ... § 3730(e)(4) is ... an issue of subject matter jurisdiction." *United States ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148 (2d Cir.1993) (quoting *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 551 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1364, 122 L.Ed.2d 742 (1993)). "Section 3730(e)(4) is intended to bar 'parasitic lawsuits' based upon publicly disclosed information in which would-be relators 'seek remuneration although they contributed nothing to the exposure of the fraud.'" *Id.* (quoting *United States ex rel. John Doe v. John Doe Corp.*, 960 F.2d 318, 319 (2d Cir.1992)).

 Section 3730(e)(4) was "designed to preclude *qui tam* suits based on information that would have been equally available to strangers to the fraud transaction had they chosen to look for it as it was to the relator." *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Insurance Co.*, 944 F.2d 1149, 1155–56 (3d Cir.1991); *see also United States ex rel. John Doe v. John Doe Corp.*, 960 F.2d 318, 322 ("Potential accessibility" by those not a party to the fraud [is] the touchstone of public disclosure. (citing *Stinson* )) [3]. Moreover, such an action is precluded if it is based—*in any part*—upon publicly disclosed allegations or transactions, and not only if it is based *solely* upon publicly disclosed information. *Kreindler,* 985 F.2d at 1158.

 Here, Gold's remaining claims are primarily based—and certainly at least in part—upon publicly disclosed allegations and transactions. As a result, for Gold to avoid this statutory bar, he must satisfy the limited exception to that bar provided by § 3730(e)(4)(A) & (B)—*i.e.*, he must be an "original source of the information." "Original source" is expressly defined in § 3730(e)(4)(B)—"a *qui tam* plaintiff must (1) have direct and independent knowledge of the information on which the allegations are based, and (2) have voluntarily provided such information to the government prior to filing suit." *Kreindler,* 985 F.2d at 1159. Furthermore, "there is an additional requirement that a *qui tam* plaintiff must meet in order to be considered an 'original source,' namely, a plaintiff also must have directly or indirectly been a source to the entity that publicly disclosed the allegations on which a suit is based[, and Gold] does not meet these requirements." *Id.*

As in *Kreindler:*

Gold "had no significant direct knowledge ... independent of the disclosures made to [him] and the news articles, and [he] certainly was not a source of that information. The fact that [he] conducted some collateral research and investigations ... as would

**3.** Additionally, *John Doe* states that "[p]ublic disclosure of the allegations divests district courts of jurisdiction over qui tam suits, regardless of where the relator obtained his information." 960 F.2d at 324; *see also United States ex rel. Dick v. Long Island Lighting Co.*, 912 F.2d 13, 18 (2d Cir.1990) ("if the information on which a qui tam suit is based is in the public domain, and the qui tam plaintiff was not a source of that information, then the suit is barred"). Section 3730(e)(4)(A) does not merely circumscribe a narrow exception to jurisdiction, *i.e.*, one that bars only those actions based on generally accessible government documents and news media accounts; rather, § 3730(e)(4)(A) bars any *action* based, in part, upon information revealed to members of the public with no prior knowledge thereof. *John Doe,* 960 F.2d at 323. Thus, because "the government can no longer throw a cloak of secrecy around" this information, such information has been "irretrievably released into the public domain[;]" and the mere "fact that they may not be widely disseminated does not inure to the benefit of a *qui tam* relator." *Id.*

be customary in such litigation, does not establish 'direct and independent knowledge of the information on which the allegations are based' within the meaning of s 3730(e)(4)(B) ... [rather, the public disclosure of the Government] was clearly the source of the core information. Nor does the fact that [Gold's] background knowledge enabled [him] to understand the significance of the information acquired ... make [his] knowledge independent of the publicly disclosed information. If that "were enough to qualify the relator as an 'original source,' then a cryptographer who translated a ciphered document in a public court record would be an 'original source,' an unlikely interpretation of the phrase."

*Id.* (quoting *Stinson,* 944 F.2d at 1160).

Thus, because Gold's *qui tam* action is based upon public disclosure of allegations or transactions within the meaning of s 3730(e)(4)(A), and because he is not an "original source" of the pertinent information within the meaning of § 3730(e)(4)(A) and (B), this Court does not have subject matter jurisdiction over the present action. Accordingly, plaintiff's amended complaint is hereby DISMISSED, with prejudice. As a result, defendants' further grounds for dismissal, and Gold's cross-motion for an extension of the discovery date deadline, need not be addressed.

Finally, given plaintiff's *pro se* status, and his apparent sincerity, defendants' request for attorneys fees is hereby DENIED.

**IT IS SO ORDERED.**