**UNITED STATES of America ex rel. Florence Hicks ALEXANDER, d/b/a Ebon Research Systems, Plaintiff,**

v.

**DYNCORP, INC., et al., Defendants.**

**Civil Action No. 94–161 SSH.**

United States District Court, District of Columbia.

April 30, 1996.

---

Janet M. Cook–Love, Ebon Research Systems, Sterling, VA, Michael F. Hertz, Civil Division, Dept. of Justice, Washington, DC, for Plaintiff.

William J. Dempster, Holland & Knight, Washington, DC, for Defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are defendants' motion to dismiss plaintiff's complaint, plaintiff's opposition thereto, the United States' memo-

randum regarding defendants' motion to dismiss, defendants' response to plaintiff's opposition, and defendants' response to the United States' memorandum.[1] The Court grants defendants' motion to dismiss with respect to Counts I, II, and IV, and grants summary judgment for defendants with respect to Count III. Although "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12," Fed.R.Civ.P. 52(a), the Court nonetheless sets forth its reasoning.

## BACKGROUND

■ In considering a motion to dismiss, the Court accepts as true the factual allegations of the complaint and draws from them all reasonable inferences favorable to the plaintiff. *United Parcel Serv., Inc. v. International Bhd. of Teamsters*, 859 F.Supp. 590, 593 (D.D.C.1994). The following facts are taken from plaintiff's complaint. Plaintiff Florence Hicks Alexander, d/b/a Ebon Research Systems ("Ebon"), submitted a Business Management Proposal, a Basic Technical Proposal, and a Basic Price Proposal to the United States Department of Justice on or about November 12, 1992, in response to DoJ Solicitation No. JOJMD–93–R–0014 ("1992 Solicitation"). The 1992 Solicitation requested proposals for the performance of follow-on administrative support services in connection with the DoJ's Asset Forfeiture Program.[2] Ebon submitted a Revised Best and Final Offer to the DoJ in response to the 1992 Solicitation on or about May 18, 1993.

On or about November 12, 1992, defendant Dyncorp, Inc. ("Dyncorp") also submitted a comprehensive proposal to the DoJ in response to the 1992 Solicitation. Dyncorp likewise submitted a Revised Best and Final Offer on or about May 18, 1993. Plaintiff alleges that defendant Dyncorp and defendants Gorkowski, Walter, and Konvica (the "individual defendants"), represented to the DoJ that the company had a satisfactory record of business ethics despite a 1987–88 conviction for bid rigging and a 1992 finding by the Army that Dyncorp had submitted false claims and committed theft and mail fraud in connection with an Army contract (the "Fort Huzchuca Contract").[3]

In their bid proposals, defendants allegedly indicated that certain "key personnel" were willing and able to work under DoJ's proposed contract salaries, which allowed defendants to bid $122 million for the 1993 Contract. Plaintiff alleges that, after the award of the 1993 Contract to Dyncorp, defendants informed the DoJ that the "key personnel" had refused the salaries offered as part of their bid proposal. Plaintiff claims that Dyncorp dealt with the rejection of the proposed salaries by informing the DoJ that the Wage Determination incorporated into the 1992 Solicitation was too low and by requesting a revised Wage Determination. The DoJ issued a revised Wage Determination with respect to the Data Analyst I, Data Analyst II, Legal Technician I, and Legal Technician II positions. Plaintiff also claims that, in addition to requesting a second Wage Determination, Dyncorp submitted false invoices to the DoJ charging higher benefit rates for employees under the contract than the rates passed on to the employees; submitted false invoices and billing statements for Legal Technician positions, because the employees in question do not perform legal duties; and submitted false invoices and bill-

---

1. On October 19, 1994, the United States filed a notice declining to intervene in this *qui tam* action. However, pursuant to 31 U.S.C. § 3730(b)(1), on January 11, 1996, the Court invited the Attorney General to comment on defendants' pending motion to dismiss.

2. The support services contract ("1993 Contract") was awarded to Dyncorp, Inc., on June 9, 1993. Plaintiff's proposal was ranked third. On January 28, 1994, plaintiff filed suit against the DoJ, Dyncorp, and several individual federal and non-federal defendants, alleging various constitutional and statutory violations. *Alexander v. United States Dep't of Justice*, Civ. No. 94–152

SSH (*"Ebon I"*). The federal defendants' motion to dismiss plaintiff's complaint in part and the non-federal defendants' motion to dismiss were granted by this Court on January 17, 1996.

3. The Fort Huzchuca Contract was an Instrumental Test Range contract with the United States Army Electronics Proving Ground at Fort Huzchuca in Arizona. As a result of its investigation of Dyncorp, the Army recovered $104,919 and $70,782.39 from Dyncorp due to overbilled invoices. The Army also modified the Fort Huzchuca contract in February 1993, to reduce the fixed-price portion of the contract by $250,000.00 to correct billing irregularities.

ing statements for Supervisor positions, because the employees in question do not perform supervisory activities.

Plaintiff also alleges that defendants utilized the services of Ebon's former General Counsel and Ebon's Project Director for a prior DoJ contract to write and prepare Dyncorp's bid proposal for the 1992 Solicitation. Plaintiff also contends that individual defendants submitted false affidavits to the DoJ indicating that they did not receive assistance from former Ebon employees in the preparation of their bid proposals.

Plaintiff's complaint also contains allegations unrelated to the 1992 Solicitation. First, plaintiff contends that defendants submitted false invoices and billing statements to the Army in connection with labor hours worked on a Fort Belvoir base maintenance contract, because the payment requested was related to buildings which were demolished or vacant. Second, plaintiff alleges that defendants filed annual and interim reports with the Securities and Exchange Commission ("SEC") in 1991, 1992, and 1993, which failed to disclose Army findings of theft, mail fraud, and false claims, and which included an erroneous statement of corporate earnings inflated to include amounts improperly billed to the Army under the Fort Huzchuca contract and a misrepresentation of corporate earnings due to the inclusion of amounts improperly billed under the 1993 Contract.

Plaintiff filed this action on January 31, 1994. Count I alleges violations of the False Claims Act for submitting false statements in connection with the 1992 Solicitation. Count II alleges violations of the False Claims Act for submitting false information to the DoJ to obtain unauthorized monies under the 1993 Contract in the form of the revised Wage Determination and false invoices for work not performed under the contract. Count III alleges a violation of the False Claims Act in obtaining funds under the Fort Belvoir Contract. Finally, Count IV alleges a violation of the False Claims Act for submitting false claims to the SEC. Defendants have moved for dismissal of the complaint in full on the grounds of lack of subject matter jurisdiction, failure to state a claim upon which relief may be granted, lack of personal jurisdiction, and failure to plead with particularity as required by Fed.R.Civ.P. 9(b).

## ANALYSIS

■ As a preliminary matter, the Court will address defendants' third ground for dismissal, lack of personal jurisdiction over defendants Gorkowski, Walter, and Konvica, in their individual capacities. Fed.R.Civ.P. 4 provides that service of a summons or filing of a waiver of service is effective to establish jurisdiction over the person of a defendant "when authorized by a statute of the United States." Fed.R.Civ.P. 4. The False Claims Act, 31 U.S.C. § 3729 *et seq.* (1994) [hereinafter "FCA"], authorizes nationwide service of process. The jurisdictional portion of the FCA provides in relevant part:

Any action under § 3730 may be brought in any judicial district in which the defendant, or in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by § 3729 occurred. A summons as required by the Federal Rules of Civil Procedure shall be issued by the appropriate district court and served at any place within or outside the United States.

31 U.S.C.A. § 3732(a) (1994). Defendants' argument that § 3732(a) should be limited to suits by the government fails, because it conflicts with the statutory language of the FCA. Section 3732 applies to "any action under § 3730," which explicitly includes actions by private parties. 31 U.S.C.A. § 3730(b)(2).

■ Because plaintiff filed suit in the District of Columbia, consistent with the FCA authorization of nationwide service, the Court conducts a minimum contacts due process analysis with respect to the District of Columbia. As part of this analysis, the Court notes that the 1992 Solicitation which underlies this claim was issued in Washington, D.C., the bid proposal was submitted in Washington, D.C., and Dyncorp's prior government contracts presumably led the company to transact business regularly in the District. Further, defendant Dyncorp does not contest its amenability to personal jurisdiction. Because the jurisdictional portion of the FCA authorizes jurisdiction over all de-

fendants when there exists jurisdiction over one defendant, the Court will exercise personal jurisdiction over all defendants to this action. Dismissal on the ground that there is a lack of personal jurisdiction would be inappropriate. Accordingly, the remainder of this Opinion applies with equal force to Dyncorp and the other defendants in their individual capacities.

*Lack of Subject Matter Jurisdiction*

The Court considers each argument for lack of subject matter jurisdiction in turn: the failure to set forth a "claim" as defined under the FCA with respect to Counts I, II, and IV, the failure to show that the complaint is not based on public information or that plaintiff is the "original source" for such information with respect to all four Counts, and that the claim is jurisdictionally barred by 31 U.S.C. § 3730(e)(3) with respect to Counts I and II.

1. *Failure To Set Forth a "Claim" as Defined by the False Claims Act*

Defendants request dismissal of Counts I, II, and IV for failure to set forth a "claim." The False Claims Act defines "claim" as follows:

Any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States provides any portion of the money or property which is requested or demanded, or if the government will reimburse such contractor, grantee or other recipient for any portion of the money or property which is requested.

31 U.S.C. § 3729(c).

■ The Court rejects defendants' assertion that Counts I and II of the complaint fail to meet the statutory definition of "claim." It has been established that claims for payment submitted to the government pursuant to a fraudulently obtained contract violate the FCA, even if the claims themselves do not contain false statements. The Supreme Court in *United States ex rel. Marcus v. Hess* held that an electrical contractor who obtained a federally subsidized public works contract through collusive bidding violated the FCA, although the contractor's later claims for payment were submitted to the government through an intermediary. 317 U.S. 537, 542–44, 63 S.Ct. 379, 383–84, 87 L.Ed. 443 (1943). The Court stated in relevant part:

The government's money would never have been [paid] ... to respondents had its agents known the bids were collusive.... This fraud did not spend itself with the execution of the contract. The initial fraudulent action and every step thereafter taken pressed to the ultimate goal—payment of government money to persons who had caused it to be defrauded.

*Id.* at 543–44, 63 S.Ct. at 384.

■ Similar logic applies to the case at hand. Count I alleges that defendants fraudulently obtained the 1993 Contract by submitting false statements in its bid proposal upon which the DoJ relied in awarding the 1993 Contract, regarding its record of business ethics and the availability of "key personnel" to complete the contract at the stated price.[4] If Dyncorp obtained the 1993 Contract fraudulently, then all claims submitted under the contract are fraudulent.

■ Count II alleges that defendants submitted false information to obtain revised Wage Determinations under the 1993 Contract and submitted false invoices. In accordance with *Hess*, the Court finds that submission of false information which resulted in the issuance of new Wage Determinations, then incorporated into the Contract, would have the effect of causing the government to pay out money which it would not otherwise have paid. Accordingly, the submission of false invoices clearly falls within the definition of "claim." For these reasons, the Court finds that dismissal of Counts I and II for failure to set forth a "claim" is inappropriate.

---

4. The Court notes defendants' contention that the Federal Acquisition Regulations do not require disclosure of its conviction for bid rigging, but the parties' pleadings do not provide an adequate basis upon which the Court may review the FAR's disclosure requirements. Therefore, the Court will not grant defendants' motion to dismiss on this ground.

■ Count IV fails to meet the statutory requirements for a "claim" under the FCA. Plaintiff contends in Count IV that defendants misrepresented information in their annual and interim reports to the SEC. Compl. at 27. Given that these reports are used by potential private investors and that plaintiff alleges that Dyncorp "received monies for stock and investments, which they would not have received had they properly submitted their financial position," the Court finds that there has been no request or demand upon the United States for money or property. Compl. at 27. Plaintiff admits the same in stating, "[r]elator will move by separate motion to amend the Fourth Cause of Action, which may not as written sufficiently plead a 'claim' under the False Claims Act." Pl.'s Opp'n. at 4. Plaintiff has not filed an amended complaint. Accordingly, this Court dismisses Count IV for failure to satisfy the "claim" requirement for jurisdiction under the False Claims Act.

2. *Failure To Meet the Public Disclosure and "Original Source" Requirements of the False Claims Act with Respect to a Qui Tam Plaintiff*

■ Defendants request the Court dismiss all Counts as jurisdictionally barred by the FCA, because this statute prohibits suits:

> based upon the public disclosure of allegations or transactions in a criminal, civil or administrative hearing, in a congressional, administrative or General Accounting Office report, hearing, audit, or investigation, or from the news media, unless ... the person bringing the action is an "original source" of the information.

31 U.S.C. § 3730(e)(4)(A). In evaluating whether plaintiff's claims are barred by this provision, the Court uses the two-part framework adopted in *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645 (D.C.Cir.1994). First, the Court evaluates whether the claim is based upon transactions or allegations which were "pub-

licly disclosed" in a "criminal, civil or administrative hearing, in a congressional, administrative or General Accounting office report, hearing, audit or investigation, or from the news media." 31 U.S.C. § 3730(e)(4)(A); *see Quinn*, 14 F.3d at 651. If the claims are "publicly disclosed," the Court then determines whether plaintiff fits within the "original source" exception to the prohibition against "publicly disclosed" claims.

■ The "public disclosure" prong of the two-part test includes two elements: (1) "publicly disclosed," and (2) "based upon transactions or allegations." Courts have broadly interpreted the term "publicly disclosed." For example, discovery material filed with a court and not under protective order is "publicly disclosed." *United States ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1158 (2nd Cir.), *cert. denied*, 508 U.S. 973, 113 S.Ct. 2962, 125 L.Ed.2d 663 (1993). Further, information revealed in a hearing is "public" and the term "hearing" is read to apply to any type of "legal proceeding." *Quinn*, 14 F.3d at 652. However, judicial interpretation of the term "transaction or allegation" is less straightforward. The court in *Quinn* concluded that "transactions and allegations" are not synonymous with "information." *Id.* at 653. "Transaction" suggests an "exchange between two parties or things that reciprocally affect or influence one another." *Id.* at 654. "Allegation" connotes a conclusory statement "implying the existence of provable supporting facts." *Id.* In deciding whether the information conveyed to the court is "based upon a publicly disclosed allegation or transaction," the question is whether the information in the public domain "could have formed the basis for a government decision on prosecution, or could at least have alerted law enforcement authorities to the likelihood of wrongdoing...." *Id.* (quoting *Pettis ex rel. United States v. Morrison–Knudsen Co.*, 577 F.2d 668, 674 (9th Cir.1978)).[5]

---

5. The court in *Quinn* illustrates the concept of "transaction and allegation" using a mathematical formulation. $X + Y = Z$; Z represents the allegation of fraud and X and Y illustrate the essential elements of the fraudulent "transaction." 14 F.3d at 654. The language of 31

U.S.C. § 3730(e)(4)(A) suggests that Congress sought to prohibit *qui tam* suits "only when either the allegation of fraud or the critical elements of the fraudulent transaction were in the public domain." *Id.*

If plaintiff's allegations are determined to be "publicly disclosed," the Court then must determine whether plaintiff fits within the "original source" exception to the statutory prohibition against "publicly disclosed" allegations. The statute defines "original source" to include: "[a]n individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B).

■ In order to be an "original source," the *qui tam* plaintiff must have both "direct and independent knowledge of the information on which the allegations are based." *Id.* Courts have interpreted "direct" knowledge as "marked by the absence of an intervening agency." *Quinn,* 14 F.3d at 656 (citing *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.,* 944 F.2d 1149, 1160 (3rd Cir.1991)). "Independent" knowledge is knowledge that is not "itself dependent on public disclosure." *Quinn,* 14 F.3d at 656 (citing *Houck v. Folding Carton Admin. Comm.,* 881 F.2d 494, 505 (7th Cir.1989), *cert. denied,* 494 U.S. 1025, 110 S.Ct. 1514, 108 L.Ed.2d 650 (1990)). Because the Court is concerned with "direct and independent" information, it is sufficient for plaintiff to have "direct and independent knowledge of *any* essential element of the underlying fraud transaction." [6] *Id.* at 657 (emphasis in original).

■ The Court applies the two-part "original source" test to the remaining Counts I, II, and III. Count I alleges that defendants failed to report the conviction for bid rigging, failed to report an Army finding of false claims in connection with the Fort Huzchuca contract, misinformed the DoJ that "key personnel" were willing and able to perform the contract at specified salaries, and failed to inform the DoJ that Ebon's former employees helped prepare bid proposals. The Court finds that the allegations with respect to the bid-rigging conviction and

the Army finding are "publicly disclosed" because the allegedly false statements were submitted to the DoJ as part of the bid proposal and the existence of a contradictory conviction and findings were necessarily recorded as part of a court proceeding and an Army hearing. *Quinn,* 14 F.3d at 652 (noting that for purposes of the FCA, 31 U.S.C. § 3730(e)(4)(A), "hearing" is synonymous with "proceeding"). The allegation that Dyncorp's "key personnel" were unable to perform the contract for the bid price was "publicly disclosed," because both the statement that employees would perform at the stated price and the later statement that the employees were unable to perform at the price were reported by defendants to the DoJ.

■ The Court next evaluates whether the three "publicly disclosed" allegations contained within Count I fit within the "original source" exception. All three allegations fail to satisfy the "original source" exception, because the nature of the allegations eliminates the possibility that plaintiff obtained her information "directly." In order to confirm that Dyncorp was convicted of bid rigging, Dyncorp was found to have filed false claims by the Army, or that Dyncorp was unable to complete the 1993 Contract at the bid price, plaintiff would necessarily have checked court records, Army hearing records, and DoJ records. Another district court has rejected similar allegations by an unsuccessful bidder on a government contract, on the grounds that he was not the "original source" simply because he conducted some collateral research and had background knowledge that allowed him to understand the significance of publicly disclosed information. *United States ex rel. Gold v. Morrison–Knudsen Co.,* 870 F.Supp. 457 (N.D.N.Y.1994), *aff'd sub nom Gold v. Morrison–Knudsen Co.,* 68 F.3d 1475 (2nd Cir. 1995). Accordingly, dismissal of these three allegations within Count I is appropriate.

■ The final allegation within Count I— that defendants failed to report participation of Ebon's former employees—is not "publicly

---

6. With respect to the court's mathematical analogy in *Quinn,* the "independent information" requirement for an "original source" is satisfied if the plaintiff has direct and independent knowledge of either X or Y in the following equation: $X + Y = Z$. 14 F.3d at 657.

disclosed," because the individual defendants submitted affidavits to the contrary and affirmatively misled the government with respect to the truth of this matter. Compl. at 15. This final assertion is not based upon "publicly disclosed" information and does not bar jurisdiction under the FCA. *Quinn*, 14 F.3d at 655 (concluding that "[f]raud requires recognition of two elements: a misrepresented state of facts *and* a true set of facts. The presence of one or the other in the public domain, but not both, cannot be expected to set government investigators on the trail of fraud."). With respect to the one allegation of Count I found not to be "publicly disclosed," dismissal is inappropriate.

 Count II alleges that defendants submitted false information to the DoJ to obtain revised Wage Determinations and that defendants submitted false invoices and billing statements with respect to Legal Technician and Supervisor positions filled by individuals who were not performing duties consistent with the job description. With respect to the Wage Determination allegation, the Court finds this to be "publicly disclosed," because the DoJ was aware of defendants' initial bid based on the existing Wage Determination and its subsequent request for a revised Wage Determination. This comports with the court's language in *Quinn*, whereby information in the "public domain" is that which could have "formed the basis for a government decision on prosecution, or at least could have alerted law enforcement authorities to the likelihood of wrongdoing." 14 F.3d at 654. Plaintiff alleges that the appropriate approach would be to file a conformance plan.[7] Therefore, defendants' request for a revised Wage Determination could have alerted the DoJ to potential fraud. Further, plaintiff does not meet the "original source" exception, because the allegation is based on defendants' public disclosure of the need for a revised Determination,

information which necessarily required confirmation from the DoJ. Accordingly, the allegations of Count II with respect to Wage Determinations are dismissed.

 There is no indication in the pleadings that plaintiff's allegations concerning false billing with respect to Legal Technician or Supervisor positions have been "publicly disclosed" or that the nature of these invoices would have alerted the government to potential fraud. Accordingly, dismissal of the allegation contained in Count II that defendants submitted false invoices for failure to meet the "original source" requirement is inappropriate.

Count III alleges that defendants fraudulently obtained funds from the government under its Fort Belvoir contract. At the time that plaintiff filed this action, Dyncorp was already under investigation by the FBI for fraud upon the government in connection with the Fort Belvoir contract. The Washington Post published details of this investigation on January 11, 1994, in an article entitled "FBI Probes Dyncorp on Fort Belvoir Contract; Investigation Focuses on Whether Reston Firm Fulfilled Contract."[8] The article states in relevant part:

News of the investigation is contained in a lawsuit filed in Fairfax County Circuit Court by a former Dyncorp employee, Hollis McBroom, who said he was dismissed from the company for cooperating with the FBI.... McBroom ... alleges in his lawsuit that he discovered that Dyncorp officials were filing false bills and that when he confronted supervisors about it, they told him to stay silent.

*Id.* As evidenced by the previous passage, there remains no question of fact as to whether plaintiff was an "original source" for the information relating to fraud in the Fort Belvoir contract. She clearly was not. Accordingly, the Court will grant summary

---

7. Plaintiff asserts that a contractor should submit a conformance plan with proposed applicable correlations between the Wage Determination and specific job categories. The Department of Labor would then assess the validity of the proposed correlations.

8. The United States provided this article to the Court as an attachment to its Memorandum Regarding Defendants' Motion to Dismiss. Because the Court considered information outside of the pleadings with respect to Count III, it will treat defendants' motion to dismiss Count III as a motion for summary judgment. *See* Fed. R.Civ.P. 12(b).

judgment for defendants with respect to Count III.

### 3. *Jurisdictional Bar of Qui Tam Action Pursuant to 31 U.S.C. § 3730(e)(3)*

The False Claims Act contains a jurisdictional bar which provides as follows: "In no event may a person bring an action under subsection (b) which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party." 31 U.S.C. § 3730(e)(3). Defendants contend that Counts I and II of this action are jurisdictionally barred because the allegations contained herein were previously set forth in *Alexander v. United States Dep't of Justice,* Civil Action No. 94–0152 (D.D.C.) ("*Ebon I* "), filed with this Court on January 28, 1994.[9]

The court in *United States ex rel. S. Prawer & Co. v. Fleet Bank of Maine* interpreted the language "based upon transactions or allegations which are the subject of" another lawsuit to require a determination as to whether the two lawsuits in question can be viewed as having a "host/parasite relationship." 24 F.3d 320, 327 (1st Cir.1994). A parasitic relationship is one in which the *qui tam* case is receiving "support, advantage or the like" from the host case in which the government is a party, without giving "any proper or useful return to the government." *Id.*

The court in *Fleet Bank* allowed a subsequent *qui tam* action based on allegations duplicated from an earlier suit for the following reasons: (1) the earlier suit did not involve an attempt by the government to remedy fraud committed against it, and (2) the government could not have put forth the fraud allegation in the prior suit because it would have required the government to assert as plaintiff both the validity and the invalidity of a bank note. *Id.* at 328. The court further noted that the action provided a "useful return" to the government because it allowed the government to seek recovery

against alleged defrauders of the government for actions which had not yet been subject to suit by the government, and the suit could potentially restore funds to the public coffer. *Id.* at 329. The court explicitly rejected the contention that *qui tam* actions "were to be avoided once the government had notice of the transactions or allegations giving rise to the actions." *Id.*

■ Review of the *Ebon I* complaint in conjunction with the current action indicates that the four allegations of Count I are duplicative of allegations set forth in *Ebon I.* Count I of the current complaint alleges failure on the part of Dyncorp officials to disclose prior bid rigging convictions, which is also contained in the *Ebon I* complaint at ¶ 370. Plaintiff also alleges failure to report Army findings with respect to fraud in the Fort Huzchuca contract, an allegation duplicative of *Ebon I* complaint ¶ 370. Plaintiff asserts that Dyncorp falsely represented that "key personnel" were willing and able to perform at bid price, which repeats an allegation contained in the *Ebon I* complaint at ¶ 247. Finally, plaintiff contends that Dyncorp failed to disclose assistance received from plaintiff's former employees, an allegation implicitly duplicative of *Ebon I* complaint ¶¶ 329–361.

■ Count II of plaintiff's current complaint contains allegations that defendants submitted false claims to obtain unauthorized monies under the 1993 Contract. Plaintiff alleges two different actions in support of this contention, the first of which is duplicative of an allegation set forth in *Ebon I.* The allegation that defendants fraudulently obtained a revised Wage Determination from the DoJ is repetitive of the allegation set forth in the *Ebon I* complaint at ¶ 277. Plaintiff's allegation that defendants submitted billing invoices for Legal Technician and Supervisor positions, which were not filled by employees performing such duties, is not duplicative of an allegation in the *Ebon I* complaint.

9. Plaintiff filed a number of earlier actions in connection with the 1993 Contract. The Court recognizes that the parties refer to *Ebon I* in their pleadings as "Ebon II," because of an earlier-filed lawsuit brought (and voluntarily dismissed) by the same plaintiff against the same defendants, but the Court will deviate from this designation for the sake of clarity here.

Because all but one of plaintiff's allegations were previously asserted in *Ebon I*, the possibility existed that plaintiff could use information obtained during discovery in *Ebon I* to provide "support [or] advantage" to this *qui tam* action. The *Fleet Bank* case is distinguishable from the case at hand in two important ways. First, plaintiff's FCA claim could have been filed as part of *Ebon I* without hurting the government's position in that case. The DoJ could have intervened as a plaintiff and filed a cross-claim against Dyncorp with respect to FCA claims without controverting its defense of plaintiff's other claims in *Ebon I*.[10] Second, there will be no useful return to the government as a result of this suit, financial or otherwise, because the United States government has declined to intervene in this matter.

Accordingly, the Court grants dismissal of all allegations previously set forth in *Ebon I* pursuant to 31 U.S.C. § 3730(e)(3). The only allegation remaining after the Court's analysis of the requirements for subject matter jurisdiction under the FCA is plaintiff's allegation with respect to the Legal Technician and Supervisor billing invoices contained in Count II of the current complaint.

*Failure To State a Claim Upon Which Relief Can Be Granted*

██ Defendants alternatively request dismissal of this suit for failure to plead with particularity as required for all fraud claims under Fed.R.Civ.P. 9(b). The Court treats failure to plead fraud with particularity as a ground for dismissal for failure to state a claim upon which relief can be granted. *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520 (5th Cir.1993).

The Supreme Court has set forth the following elements as necessary to plead a claim for fraud: (1) false representation, (2) in reference to a material fact, (3) made with the knowledge of falsity, (4) with the intent to deceive, and (5) action taken and reliance upon the representation. *Pence v. United States*, 316 U.S. 332, 338, 62 S.Ct. 1080, 1083–84, 86 L.Ed. 1510 (1942). Rule 9(b) requires

that "in all averments of fraud or mistake, the circumstances constituting fraud … shall be stated with particularity." The rule has been interpreted to require a plaintiff to "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C.Cir.), *cert. denied*, 455 U.S. 999, 102 S.Ct. 1630, 71 L.Ed.2d 865 (1981).

██ Due to the length of plaintiff's complaint, the Court will not assess the sufficiency of pleading with respect to each and every allegation. Rather, the Court will assess the only allegation of the complaint remaining after the subject matter jurisdiction dismissal, which claims that defendants submitted false invoices to the DoJ requesting payment for Legal Technician and Supervisor positions which were not filled by employees performing such duties. Plaintiff fails to state the date or dates on which the allegedly false invoices were submitted, to give the invoice(s) number, to identify the employees responsible for the submission, and to state facts from which the Court can infer a knowing violation on the part of the defendants. *See Cannon*, 642 F.2d at 1385–86 (dismissing suit against a United States Senator as vague and failing to satisfy Rule 9(b) because the plaintiff did not state with specificity the members of the senator's staff involved in rendering personal services while receiving a government salary or the nature of the personal services rendered); *In re Haven Industries, Inc.*, 462 F.Supp. 172 (S.D.N.Y. 1978) (dismissing complaint under Rule 9(b) for failure to delineate among defendants' responsibility for allegedly fraudulent activities).

The purpose of Rule 9(b) is to provide defendants with notice of the violation with which they are charged, in order that they may prepare an adequate defense. *Cannon*, 642 F.2d at 1385. Further, the rule discourages "the initiation of suits brought solely for their nuisance value" and protects defen-

---

10. Plaintiff's complaint in *Ebon I* sets forth primarily procedural violations and claims of discrimination with respect to the DoJ. Count XVII with respect to Dyncorp is a claim for fraud. Plaintiff could have included FCA violations under this section and the DoJ could have cross-claimed against Dyncorp for FCA violations.

dants from "frivolous accusations of moral turpitude." *Id.* Given that plaintiff has filed a lengthy complaint with seemingly overlapping and duplicative allegations, the Court looks to the purpose behind Rule 9(b) and dismisses the remaining allegation of plaintiff's complaint with respect to the filing of false invoices in connection with Legal Technician and Supervisor positions.

### *CONCLUSION*

For the reasons stated above, the Court grants defendants' motion to dismiss with respect to Counts I, II, and IV and grants summary judgment for defendants with respect to Count III. An appropriate Order accompanies this Opinion.

### *ORDER*

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that defendants' motion to dismiss is granted with respect to Counts I, II, and IV. It hereby further is

ORDERED, that summary judgment is granted for defendants with respect to Count III.

SO ORDERED.